**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

QUANZHOU YONGCHUN BEILANG E-
COMMERCE CO.,LTD.,

Plaintiff,

v.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED IN SCHEDULE "A",

Defendants.

No. 26-cv-3190

DEMAND FOR JURY TRIAL

**COMPLAINT**

Plaintiff Quanzhou Yongchun Beilang E-Commerce Co.,Ltd. ("Plaintiff"), by and through

its undersigned counsel, hereby files this Complaint for trademark infringement and false

designation of origin under the Lanham Act against the Partnerships and Unincorporated

Associations Identified in **Schedule A** attached hereto (collectively, "Defendants"). In support

hereof, Plaintiff states as follows:

**I.      JURISDICTION AND VENUE**

1.      This Court has original subject matter jurisdiction over the claims in this action

pursuant to the provisions of the Lanham Trademark Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. §

1338(a)-(b) and 28 U.S.C. § 1331.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may

properly exercise personal jurisdiction over Defendants, since each Defendant directly targets

business activities toward consumers in the United States, including Illinois, through their

operation of or assistance in the operation of the fully interactive, commercial internet stores

operating under the Defendant Internet Stores identified in Schedule A. Specifically, each of the

1

Defendants directly reaches out to do business with Illinois residents by operating or assisting in the operation of one or more commercial, interactive e-commerce stores that sell counterfeit products infringing Plaintiff's federally registered trademark directly to Illinois consumers. In short, each Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II.  INTRODUCTION

3.  Plaintiff filed this action to combat online infringers and counterfeiters who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit and infringing products using counterfeit versions of Plaintiff's federally registered trademark. ("Counterfeit Products"). The Defendants created internet stores operating under at least the online marketplace accounts identified in **Schedule A** (the "Defendant Internet Stores" or the "Stores") by the dozens and designed them to appear to be selling genuine copies of Plaintiff's products when in fact the Stores are selling counterfeit versions to unknowing customers.

4.  The Defendant Internet Stores share unique identifiers, such as similar design elements of the infringing product offered for sale and, on information and belief, these similarities suggest that the Defendant Internet Stores share common manufacturing sources, thus establishing the Defendants' counterfeiting and infringing operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants have gone to great lengths to avoid liability by concealing both their identities and the full scope and interworking of their counterfeiting operation, including changing the names of their Stores multiple times, opening new Stores, helping their friends open Stores, and making subtle changes to their products. Plaintiff has been forced to file this action to combat Defendants' willful infringement of Plaintiff's registered

trademark, as well as to protect unknowing consumers from purchasing infringing products over the internet. Because of Defendants' actions, Plaintiff has been and continues to be irreparably damaged both through consumer confusion, dilution, and tarnishment of its valuable trademark as a result of Defendants' actions. Accordingly, Plaintiff seeks injunctive and monetary relief.

### III.    THE PARTIES

5.      Plaintiff specializes in the creation, manufacture, marketing, and sale of toys, games, and Swimming floats including in association with Plaintiff's internationally recognizable and federally registered trademark (collectively, "Plaintiff's Products" or "Plaintiff Products"). Plaintiff is the owner of a U.S. trademark registration ("Plaintiff's Mark") used to identify its products that it markets, sells, and licenses. *See* **Exhibit 1**. Plaintiff is the owner and licensor of all of Plaintiff's Products that are available at, inter alia, the website identified in **Exhibit 2**.

6.      Plaintiff is the owner of all rights, title, and interest in and to the Plaintiff's Mark. The registration for Plaintiff's Mark constitutes prima facie evidence of their validity and of Plaintiff's exclusive right to use Plaintiff's Mark pursuant to 15 U.S.C. § 1057(b). Defendants' sales of the counterfeit items in violation of Plaintiff's intellectual property rights are irreparably damaging Plaintiff.

7.      Plaintiff has invested substantial resources, time, money, and commercial efforts in order to establish the goodwill of Plaintiff's Products and the Plaintiff's Mark. The success of Plaintiff's business enterprise is dependent and a result of Plaintiff's effort to market, promote, and advertise online via e-commerce. Genuine Plaintiff Products have become very popular, driven by Plaintiff's elevated quality standards and innovative designs. Genuine Plaintiff Products are instantly recognizable among the consuming public.

3

8.     Plaintiff has continuously used the Plaintiff's Mark in U.S. interstate commerce in connection with the sale, distribution, promotion, and advertising of genuine Plaintiff Products since 2020. Plaintiff has built substantial goodwill in and to the Plaintiff's Mark which are a well-known and valuable asset of Plaintiff.

9.     As a result of Plaintiff's long-standing use of the Plaintiff's Mark in association with Plaintiff's high-quality products, extensive sales, and significant marketing activities, the Plaintiff's Mark has achieved widespread acceptance and recognition among the consuming public and throughout U.S. interstate commerce.

10.     The success of Plaintiff's Products additionally stems from sales to consumers and interest that Plaintiff's consumers have generated.

11.     As a result of the efforts of Plaintiff, the quality of Plaintiff's Products, the promotional efforts for Plaintiff's products and designs, the members of the public have become familiar with Plaintiff's Products and Plaintiff's Mark and associate Plaintiff's Products and the Plaintiff's Mark exclusively with Plaintiff.

12.     Plaintiff has made efforts to protect Plaintiff's interests in and to the Plaintiff's Mark. Plaintiff is the only business and/or individual authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the Plaintiff's Mark. Plaintiff has not licensed or authorized Defendants to use the Plaintiff's Mark.

13.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial online marketplaces operating under the Defendant Online Stores. Each Defendant targets the United States, including Illinois

and this Judicial District, and has offered to sell and, on information and belief, has sold and continues to sell Counterfeit Products to consumers within the United States, including the State of Illinois and this Judicial District.

14.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using counterfeit versions of the Plaintiff's Mark in the same transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend this Complaint.

### IV.     THE DEFENDANTS' UNLAWFUL CONDUCT

15.     Marketplaces like Amazon, among others, allow merchants to quickly "set up shop" and flood the market with unauthorized goods which displace actual sales manufacturers would otherwise enjoy.

16.     It has been estimated that e-commerce intellectual property infringement costs merchants in the U.S. alone nearly $41 billion[1] with Department of Homeland Security seizures of infringing goods increasing more than tenfold between 2000 and 2018[2].

17.     U.S. Customs and Border Protection ("CBP") reported that for Fiscal Year 2019, 90% of all CBP intellectual property seizures were smaller international mail and express

---

[1] The National Bureau of Asian Research, The Report of the Commission on the Theft of American Intellectual Property, at 9, Pub. The Commission on the Theft of American Intellectual Property 2017, available at http://www.ipcommission.org/report/IP_Commission_Report_Update_2017.pdf.
[2] U.S. Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods Report to the President of the United States*, January 24, 2020, available at https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf.

shipments (as opposed to large cargo containers) and 85% of CBP seizures originated from mainland China, Singapore, and Hong Kong.[3] Infringing and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

18.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[4]

19.     DHS has observed that for "at least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and recommended that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual storefronts.[5]

20.     Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6]

21.     The success of the Plaintiff's Mark has resulted in substantial counterfeiting activity and other attempts to misappropriate Plaintiff's proprietary rights. Accordingly, Plaintiff has policed the use of the Plaintiff's Mark and has identified many online product listings on marketplaces such as Amazon and other Internet locations offering for sale and, on information

---

[3] U.S. Customs and Border Protection Office of Trade, Intellectual Property Rights Fiscal Year 2019 Seizure Statistics, available at, https://www.cbp.gov/sites/default/files/assets/documents/2020-Sep/FY%202019%20IPR%20Statistics%20Book%20%28Final%29.pdf.
[4] Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020).
[5] *See* Combating Trafficking in Counterfeit and Pirated Goods Report to the President of the United States, at p. 22.
[6] *Id.*, at p. 39.

and belief, selling Counterfeit Products to consumers throughout the United States, including this Judicial District.

22.     Defendants enable and facilitate sales of the Counterfeit Products by presenting the Defendant Online Stores as legitimate resellers using standardized product listing layouts and terminology. On information and belief, Plaintiff has not licensed or authorized Defendants to use the Plaintiff's Mark and none of the Defendants is authorized retailers of genuine Plaintiff's Products.

23.     Different Defendants utilize different methods to deceive unknowing consumers. Some Defendants will use the Plaintiff's Mark, without authorization, in the product description, titles, or meta tag of their store listings to attract consumers who are searching for genuine Plaintiff's Products. Other Defendants will reproduce the Plaintiff's Mark within their product listing images.

24.     Defendants take pains to conceal their identities from the public, almost invariably using store names and addresses which do not identify Defendants. Defendants may operate several stores simultaneously, using fictitious identities such as those listed in Schedule A, as well as other fictitious names and addresses. Moreover, counterfeiters like Defendants will often register new store accounts under new fictitious names when they receive notice that one or more stores have been the subject of a lawsuit. The use of these store registration schemes is one of several ways in which Defendants, to avoid being shut down, conceal their true identities and the inner workings of their counterfeit operations.

25.     Despite Defendants operating under multiple fictitious names, their stores bear numerous similarities. Counterfeit Products bear similar irregularities and indicia of being counterfeit to one another, which suggests that the products were manufactured and/or supplied by

a common source and that the Defendants selling them are interrelated. Moreover, the Defendant Online Stores use other common means to sell the Counterfeit Products including, without limitation, using the same payment processors, obfuscated contact information, identically or similarly priced items, incorrect grammar and spellings within the product listings, and the use of the same listing text and images taken from Plaintiff's own storefronts.

26. Counterfeiters like Defendants will typically ship counterfeit products in small quantities via international mail to mitigate detection by U.S. Customs and Border Protection. Further, they will typically operate multiple credit card merchant accounts (e.g., PayPal) or use layers of payment gateways to forestall their cashflow being interrupted due to trademark enforcement efforts. On information and belief, Defendants utilize offshore bank accounts and routinely move funds from PayPal, Amazon Pay, and other U.S.-based merchant accounts (e.g., within China) outside the jurisdiction of this Court.

27. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the Plaintiff's Mark in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and into Illinois over the Internet.

28. Each Defendant offers shipping to the United States, including, specifically Illinois and this Judicial District. On information and belief, each Defendant has sold Counterfeit Products into the United States and the state of Illinois.

29. Defendants' unauthorized use of the Plaintiff's Mark in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including with respect to the sale of such products into the United States, including specifically Illinois and this Judicial

8

District, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**COUNT I**

**<u>TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)</u>**

30. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 29.

31. This is a trademark infringement and counterfeit action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the Plaintiff's federally registered trademark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. Plaintiff's Mark is a distinctive mark and consumers have come to expect the highest quality from Plaintiff's Products provided under Plaintiff's Mark.

32. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with Plaintiff's Mark without Plaintiff's permission.

33. Plaintiff is the exclusive owner of Plaintiff's Mark. Plaintiff's United States Registration for Plaintiff's Mark (**Exhibit 1**) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in Plaintiff's Mark and are willfully infringing and intentionally offering counterfeit items bearing Plaintiff's Mark. Defendants' willful, intentional, and unauthorized use of Plaintiff's Mark is likely to cause confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general consuming public.

34. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

9

35. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known trademark.

36. The injuries sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offer to sell, and sale of counterfeit versions of Plaintiff's Products.

## COUNT II

### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)

37. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 36.

38. Defendant's advertising, marketing, promotion, distribution, display, offering for sale, sale, and/or otherwise dealing in counterfeit versions of Plaintiff's products has created and is creating a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of such products.

39. By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the counterfeit products, Defendants have offered and shipped goods in interstate commerce.

40. Likewise, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the counterfeit products, Defendants have and continue to trade on the extensive goodwill of Plaintiff to induce customers to purchase a counterfeit version of Plaintiff's Products, thereby directly competing with Plaintiff. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff

10

has amassed through its lengthy nationwide marketing, advertising, sales, and cumulative consumer recognition.

41.     Defendants knew or, by the exercise of reasonable care, should have known that their past, current, and continuing advertising, marketing, promotion, distribution, display, offering for sale, sale and/or otherwise dealing in the counterfeit goods has and will continue to cause confusion and mistake or to deceive purchasers, users, and the public.

42.     By using Plaintiff's Mark in connection with the sale of counterfeit products, Defendants create a false designation of origin and a misleading representation of the fact as to the origin and sponsorship of the counterfeit product.

43.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit product to the public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

44.     As a direct and proximate result of Defendants' wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its genuine products.

45.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all other persons acting for, with, by, through, under, or in active concert with them be temporarily preliminary, and permanently enjoined and restrained from:

11

i.  Using Plaintiff's Mark in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product of Plaintiff, or is not authorized by Plaintiff to be sold in connection with Plaintiff's Mark;

ii.  Passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff's product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authority, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's Mark and associated with or derived from Plaintiff's Mark;

iii.  Making, using, selling, and/or importing to the United States for retail sale or resale any products that infringe Plaintiff's Mark;

iv.  Committing any acts calculated to cause consumers to believe that Defendants' counterfeit product is those sold under the authority, control, or supervision of Plaintiff, or are sponsored by, approved of, or otherwise connected with Plaintiff, including without limitation through use of Plaintiff's original photographs texts in connection with the offer or sale of counterfeit products;

v.  Further infringing Plaintiff's Mark and damaging Plaintiff's goodwill;

vi.  Otherwise competing unfairly with Plaintiff in any manner;

vii.  Shipping (including drop-shipping), delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any Plaintiff's Mark, or any reproductions, counterfeit copies, or colorable imitations thereof;

12

viii. Using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is how Defendants could continue to sell counterfeit products;

ix. Operating and/or hosting websites at the Defendant Internet Stores of any other domain names registered or operated by Defendants that are involved in the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Plaintiff's Mark or any reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with the Plaintiff's Mark; and,

x. Registering any additional domain names that use or incorporate any portion of the Plaintiff's Mark; and,

B. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

i. Displaying images protected by the Plaintiff's Mark in connection with the distribution, advertising, offer for sale and/or sale of any product that is not a genuine product of Plaintiff's or is not authorized by Plaintiff to be sold in connection with the Plaintiff's Mark; and

ii. Shipping, delivering, holding for same, distributing, returning, transferring, or otherwise moving, storing, or disposing of in any manner products or inventory not manufactured by or for Plaintiff, not authorized by Plaintiff to be sold or offered for sale,

13

and protected by Plaintiff's Mark, or any reproductions, counterfeit copies, or colorable imitation thereof; and,

C.      That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with any and all injunctive relief ordered by this Court;

D.      Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as Amazon; payment processors such as PayPal, Stripe, Payoneer, and LianLian; social media platforms such as: Facebook, YouTube, LinkedIn, Twitter; Internet search engines such as Google, Bing, and Yahoo; webhosts for the Defendants Domain Names, and domain name registrars, that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendants engage in the sale of counterfeit products using the Plaintiff's Mark shall:

    i.      Disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit Products using Plaintiff's Mark, including any accounts associated with the Defendants listed on Schedule A;

    ii.     Disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit products using Plaintiff's Mark and;

    iii.    Take all steps necessary to prevent links to the Defendant Online Stores identified in Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Online stores from any search index; and,

E.      That each Defendant account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages

14

for infringement of Plaintiff's Mark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

F.      For Judgment in favor of Plaintiff against Defendants that they have: (a) willfully infringed Plaintiff's Mark in its federally registered trademark pursuant to 15 U.S.C. § 1114; and (b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

G.      For Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 15 U.S.C. § 1117, at the election of Plaintiffs, in an amount to be determined at trial;

H.      In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of Plaintiff's Mark;

I.      That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

J.      That Plaintiff be awarded any and all other relief that this Court deems equitable and just.

Plaintiff demands trial by jury as to all causes of action so triable.

Dated: March 22, 2026                              Respectfully submitted,

                                                   /s/ Junru Chen
                                                   Junru Chen (IL Bar No. 6344136)
                                                   Clovian Law LLC
                                                   21 S Evergreen Ave., Ste. 200-129
                                                   Arlington Height, IL 60005
                                                   (312) 500-2995
                                                   junru.chen@clovianlaw.com

15